UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHANEKA R. ROSE, as ADMNISTRATRIX     :
OF THE ESTATE OF MARCUS GREGORY       :
BROWN and MICHAEL ISLER               :
    PLAINTIFF,                        :
                                                       : CIVIL ACTION NO. 3:12cv291(VLB)
                                                       :
    v.                                :  MARCH 21, 2013
                                                       :
CITY OF WATERBURY ET AL.,             :
    DEFENDANTS.                       :

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' [DKT. ##14,16] MOTIONS TO DISMISS

       The Plaintiffs, Shaneka N. Rose ("Rose"), as administratrix of the estate of

Marcus Gregory Brown ("Brown"), and Michael Isler ("Isler"),[1] father of Brown,

bring this action against Defendants, City of Waterbury, Waterbury Police

Department, Officer Adrian Sanchez[2] and "John Does I-XX" (collectively referred

to herein as the "City") as well as against Saint Mary's Hospital (the "Hospital")

asserting several 42 U.S.C.§1983 claims as well as state law tort claims in

connection Brown's death while in the Waterbury Police's custody.  The Hospital

has filed a motion to dismiss the entire complaint as against it while the City has

filed a partial motion to dismiss certain claims pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6).  For the foregoing reasons, the Court GRANTS IN PART AND

DENIES IN PART Defendants' motions to dismiss.

      __Background__

---

[1] While the Amended Complaint names this Plaintiff as Michael Isler, the
Plaintiffs' Initial Complaint, as well as their Partial Opposition to City of
Waterbury's Partial Motion to Dismiss, name him is Isler Brown.
[2] The Amended Complaint names this Defendant as Adrienne Sanchez, but this
appears to be a typographical error.

The Plaintiffs have asserted the following claims in their amended complaint: (Count I) false arrest; (Count II) wrongful imprisonment; (Count III) assault; (Count IV) battery; (Count V) negligence; (COUNT VI) violation of civil rights; (Count VII) punitive damages; and (Count VIII) wrongful death.   In addition, the Plaintiffs allege that Isler is the father of Brown and that Shankea Rose is the administratrix of Brown's estate.  *Id.* at ¶§2-3. There are no further allegations regarding Isler other than his relationship to the decedent in the amended complaint.

The following facts are taken from Plaintiffs' first amended complaint. [Dkt. #6, Pls.' Am. Compl.].  Sometime between April 30, 2011 and May 1, 2011, Marcus Brown entered Saint Mary's Hospital in Waterbury CT, seeking behavioral health care services.  *Id.* at ¶¶10-12.  Although not stated in their amended complaint, the Plaintiffs assert in their memorandum in opposition to the motion to dismiss that shortly after Brown entered the hospital, an employee or employees of St. Mary's Hospital called the Waterbury Police Department and physically restrained Brown.  [Dkt. #17, Pls.' Opp'n To Def.'s Mot. To Dismiss, 2].  However, it is well established that "[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *K.D. ex rel. Duncan v. White Plains School Dist.,* No.11 CIV.6756(ER), 2013 WL 440556, at *14 n. 8 (S.D.N.Y. Feb.5, 2013) (citing *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F.Supp.2d 357, 363 n. 9 (S.D.N.Y.2011); *Scott v. City of New York Dep't of Corr.,* 641 F.Supp.2d 211, 229 (S.D.N.Y.2009), *aff'd,* 445 F. App'x 389 (2d Cir.2011)).

The Defendant Waterbury Police Department dispatched officers to the Defendant Hospital, including Defendant Officer Adrian Sanchez. *Id.* at ¶13. When the officers arrived, Brown was "physically restrained, handcuffed, and placed into Officer Sanchez's vehicle." *Id.* at ¶14. The Plaintiffs further assert in their memorandum that upon the officers' arrival, Brown was physically restrained by Hospital employees before being transferred into police custody, who then handcuffed and placed Brown into Officer Sanchez's police vehicle. *Id.* at ¶3.  Once placed in Officer Sanchez's police vehicle, Brown was purportedly struck with an electrical shock weapon. [Dkt. #6, Pls.' Am. Compl. at ¶15].  As a result of the electric shock, Brown was allegedly injured, suffered conscious pain and suffering, and subsequently died from his injuries. *Id.* at ¶16.

In support of these counts, the Plaintiffs allege that both the City and the Hospital were "were negligent with respect to their improper use of excessive force; negligent infliction of emotional distress; denial, delay and obstruction of medical care and treatment; negligent hiring, training, supervision, monitoring and retention of agents, servants and employees; failed to have and/or properly use an early warning screening system for psychological profiles and failed to detect and/or respond in an appropriate manner to signs and symptoms presented by police officers involved herein; breach of special duty, failed to properly supervise, safeguard, and monitor Plaintiff."  *Id.* at ¶30.

The Plaintiffs further allege that "Plaintiff was deprived of Federal, State and City rights, including but not limited to the right to be free from unreasonable search, the right to free speech, the right not to be subjected to excessive force,

the right to be free of cruel and unusual punishment, the right to equal protection under the law, the right to the fourteenth (14th ) Amendment and that Plaintiff's liberty was restrained and that defendants' initiated or maintained the prosecution against Plaintiff without probable cause and the defendants acted maliciously." *Id.* at ¶34.  The Plaintiffs declare that both the City and the Hospital "through their inadequate training or supervision of their agents, servants and employees, defendants evidenced a pattern of deliberate indifference to the individual, civil and constitutional rights of other so as to ratify such conduct and violate the rights of others, and violated Plaintiff's Civil and Constitutional rights." *Id.* at ¶35.   Lastly, the Plaintiffs allege that  all the Defendants "employed excessive force; acted in a discriminatory manner; delayed, denied and obstructed proper medical care and treatment; acted in a discriminatory manner on the basis of decedent's race/ethnicity; decedent was deprived of his civil rights by respondents, their agents/servants/employees, and others acting under color of state law; supervisors/superiors condoned or ratified improper conduct or a pattern of improper conduct or of deliberate indifference to decedent's rights and were otherwise negligent." *Id.* at ¶35.

### Legal Standard

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted) "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*(internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the

complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Here, both parties rely upon the May 6, 2009 letter responding to Plaintiff's request for Family Medical Leave, attached to the Motion to Dismiss as Exhibit B. [Dkt #15, Def.'s Mot. To Dismiss, Exhibit B]. Therefore, where Plaintiff had knowledge of the letter and both parties rely on the letter, the Court will consider the letter for the purposes of analyzing the pending motion to dismiss. *See Anderson v. Derby Bd. Of Educ.*, 718 F. Supp. 2d 258, 273 n.33 (D. Conn. 2010).

Lastly, in deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

<u>Analysis</u>

The Hospital moves to dismiss the Plaintiffs' amended complaint on the following grounds.  First, the Hospital argues that because it is not a state actor, it cannot be held liable under 42 U.S.C. §1983.  Second, the Hospital argues that Plaintiffs' tort claims must be dismissed for failure to state a claim.  The Hospital also moves to dismiss as Isler as a party as he lacks standing to bring an action on his dead son's behalf and has no independent claim of his own.  Lastly, the

Hospital moves to dismiss Plaintiffs' cause of action for punitive damages as it is not a separate and independent claim. The City also moves to dismiss Isler and the punitive damages claim for the same reasons.  In addition, the City also argues that the Waterbury Police Department should be dismissed as a Defendant in this action as it is not a legal entity with legal capacity to sue or to be sued.  The Plaintiff having not conceded the validity of any of these challenges, the Court will examine each of these arguments in turn.

     i.     **Isler as a Plaintiff**

Both the Hospital and the City argue that Isler must be dismissed as a Plaintiff in this action as he has no standing to assert a claim on behalf of his deceased son and has no independent claim of his own.   The amended complaint solely alleges that Isler is the father of Brown and nothing more.   It is well established that at "common law the death of a sole plaintiff…abated an action." *Pinney, Payne, Van Lenten, Burrel, Wolfe and DIllman, P.C.  v. Tamsett*, 74 Conn. App. 617, 621 (2003) (citation omitted).  However, Conn. Gen. Stat. §52-599(a) provides that a "cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person." Conn. Gen. Stat. §52-599(a).  " General Statutes § 52-555 creates a cause of action that may be maintained only by an executor or administrator of an estate." *Isaac v. Mount Sinai Hospital*, 3 Conn. App. 598, 600-01 (1985).  Therefore this "statute provides for the bringing of such an action by either an executor or an administrator; it does not confer on anyone else, including the parents of a decedent, any right to bring such an action

individually." *Id.* at 601.   As the Plaintiffs allege that Shaneka Rose is the administratrix of Brown's estate and not Isler, only Rose has standing to bring either the state law or Section 1983 claims on behalf of Brown.  *See Barrett v. U.S.*, 689 F.2d 324, 331 (2d Cir. 1982) ("When a party dies before pursuing his cause of action under s 1983, the claim survives for the benefit of his estate if applicable state law creates a right of survival.").  Consequently, Isler has no standing on the basis of his parental relationship with Brown to bring either the state or federal claims on behalf of his deceased son.   In addition, Isler cannot bring a claim on his individual behalf as Connecticut does not recognize a cause of action for loss of parental consortium.  *See Mendillo v. Board of Education of East Haddam*, 246 Conn. 456, 477 (1998) (declining to recognize a loss of parental consortium cause of action even where limited to the time of the child's minority). As Isler lacks standing to assert a claim on behalf of his deceased son and cannot bring a derivative claim himself, the Court dismisses Isler as a Plaintiff in this action.

ii.     Section 1983 Claims against the Hospital

The Hospital argues that the Plaintiffs fail to state a §1983 claim against the Hospital, a private entity, as they have failed to plausibly allege that the Hospital is a state actor as is necessary to establish §1983 liability.  Section 1983 provides that "[e]very person who, under color of any [state] statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003).

"[S]tate action requires both an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Fabrikant v. French,* 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks and citations omitted).  "'Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action.'" *Id.* at 207 (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 847, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)).  "But a private entity does not become a state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government.  Rather, there must be such a close nexus between the [s]tate and the challenged action that the state is

*responsible* for the specific conduct of which the plaintiff complains." *Id.* at 207 (internal quotation marks and citations omitted) (emphasis in the original).

The Second Circuit has emphasized that cases on the subject of state action have not been a model of consistency and therefore there is no single test to identify state actions and state actors but rather "'there are a host of factors that can bear on the fairness of an attribution of a challenged action to the state.'" *Id.* (quoting *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009)).   The Second Circuit has identified three main tests:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state ... (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Id.* (citations omitted).   "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.*  (quoting *Rendell-Baker*, 457 U.S. 830, 838 (1982)).

Here, Plaintiffs argue that they have alleged facts sufficient to satisfy the joint action or close nexus test because the Hospital called the Police and acted in concert with the Police to have Brown arrested and taken into custody.  Even if the Court were to consider those facts the Plaintiffs inappropriately asserted for the first time in their opposition to the motion to dismiss that Hospital staff called the Police and physically restrained Brown until the Police arrived those facts would not demonstrate that the Hospital's action were fairly attributable to the

state.  It has long been established that the mere act of calling the police does not constitute state action.  *See Bloom v. Town of New Windsor Police Dept.*, 234 F.3d 1261 (2d Cir. 2000) (holding on summary order that "[t]he district court properly held that [a private individual's] call to the police to report potential animal abuse did not constitute state action that would render a private citizen liable under § 1983."); *Stewart v. Victoria's Secret Stores, LLC*, 851 F.Supp.2d 442, 446 (E.D.N.Y. Mar. 19, 2012) ("A private party supplying information or seeking police assistance  "does not become a state actor ... unless the police officers were improperly influenced or controlled by the private party.") (internal quotation marks and citation omitted) ; *Rizzo v. Host Servs. Of New York, Inc.*, 545 F.Supp. 1193, 1195 (E.D.N.Y. 1982) (The "mere response of a police officer to a citizen's call for assistance is not enough to transmogrify the citizen's action into that of the state. To satisfy the state action requirement plaintiffs would, as a minimum, have to prove that the police were knowingly involved in a plan to deprive plaintiffs of their rights."); *see also Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir.1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § [ ] 1983....").   Here, the Plaintiffs fail to plead facts tending to support their claim that the Hospital was a state actor.  For example, they fail to plead that the Police were improperly influenced or controlled by the Hospital or that the Police Officers were knowingly involved in a plan to deprive Brown of his rights in order to establish state action based on the Hospital's conduct of calling the Police for assistance.

Further, courts have held that the act of detaining an individual suspected of wrongdoing until the police arrive does not constitute state action under §1983.  For example, "[g]enerally, the acts of private security guards hired by a store, do not constitute state action under §1983" and therefore "[c]ourts within the Second Circuit have repeatedly held that store security personnel are not state actors when they detain or call for the arrest of suspected shoplifters." *Jones v. J.C. Penney's Dept. Stores, Inc.*, No.03-CV-920A, 2007 WL1577758, at *7 (W.D.N.Y. 2007) (internal quotation marks and citation omitted) (collecting cases). There are two recognized exceptions to this general rule, first when private security guards are given the authority of state law or willfully participated in the joint activity of the State or its agents.  *Id.*  Courts have explained that willful participation in joint activity requires "more than a general understanding that the security guards can call the police for assistance.  The police must allow the security guard's judgment about whether probable cause exists to be substituted for their own" by failing to make any independent investigation.  *Harris v. Security Co. of 1370 Sixth Ave.*, No.94Civ.2599(JGK),1996 WL 556927, at *3 (S.D.N.Y. Oct. 1, 1996) (citations omitted).   Although the Plaintiffs have not specifically alleged that a security guard from the Hospital was involved, this Court finds this line of caselaw to be guiding in considering whether the acts of the Hospital can be considered state action in the present matter.  Here, the Plaintiffs have not alleged that the Hospital had any special authority to arrest Brown nor have they alleged there was a plan or concert of action beyond merely calling and detaining Brown until the Police arrived.  There are no allegations that

the Police Officers failed to investigate and failed to make their own judgment on whether probable cause to arrest Brown existed.  Even if the Court considered the additional facts the Plaintiffs have inappropriately asserted in their response that the Hospital physically restrained Brown until the Police arrived those allegations would amount to nothing more than "general allegations of cooperation between private individuals and specific state agents" which "do not make out a claim of action taken under color of state law."  *Bishop v. Best Buy, Co., Inc.*, No.08Civ.8427(LBS), 2010 WL 4159566, at *8 (S.D.N.Y. Oct.13, 2010) (internal quotation marks and citations omitted).   As the Plaintiffs' allegations do not demonstrate that the Hospital and the City were engaged in joint activity so that the actions of the Hospital are fairly attributable to the state, the Court dismisses the Plaintiffs' §1983 claims against the Hospital.

Even if the Plaintiffs had plausibly stated that the Hospital was acting under color of state law, the Hospital cannot be held vicariously liable under §1983 for its constitutional torts of its employees based on a theory of *respondeat superior*.  *Rojas v. Alexander's Department Store, Inc.,* 924 F.2d 406, 408 (2d Cir.1990) (citations omitted) ("Private employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official ... policy of some nature caused a constitutional tort.'") (quoting *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 591 (1978)); *Mejia v. City of New York,* 228 F.Supp.2d 234, 243 (E.D.N.Y.2002) ("[N]either a municipality nor a private corporation can be held vicariously liable under § 1983 for the actions of its employees.").   "Although *Monell* dealt with

13

municipal employers, its rationale has been extended to private businesses."
*Rojas*, 924 F.2d at 409.  Here, the Plaintiffs have failed to allege facts as to the
Hospital which plausibly give rise to an entitlement to relief under *Monell*.  The
Plaintiffs have conclusorily pled that the Hospital failed to supervise and train its
employees and was deliberately indifferent to the Brown's rights. [Dkt. #6, Pls.'
Am. Compl. at ¶¶34-36].   All of the Plaintiffs' allegations as to the Hospital's
failures to train and supervise amount to naked assertions devoid of further
factual enhancement which do not pass muster under *Iqbal*.  The Plaintiffs have
therefore failed to set forth any factual content to support their bald assertion that
the Hospital's failure to supervise and failure to train caused the alleged
constitutional violations in order to establish that the Hospital should be liable
under §1983.  Therefore even if the Hospital was acting under color of law, the
Hospital could not be liable under §1983 for the constitutional torts of its
employees in the absence of any plausible allegations as to the Hospital's
custom or policy which caused the alleged constitutional deprivations.   In sum,
the Court has dismissed Plaintiffs' §1983 claims against the Hospital.

    iii.    False Arrest, False Imprisonment, Assault, and Battery Claims
            against the Hospital

        Defendants argue that the Plaintiffs fail to state a claim for their tort claims
of false arrest, wrongful imprisonment, assault or battery because there are no
allegations that any employee from the Hospital restrained Brown in any manner.
The Hospital is correct that the amended complaint fails to make any allegations
that the Hospital actually physically restrained Brown in any way.   The amended
complaint simply alleges that Brown presented himself to the Hospital seeking

medical assistance and that at some subsequent point Police Officers arrived and physically restrained Brown and placed him into a police vehicle.  [Dkt. #6, Pls.' Am. Compl., ¶¶10-14].   On the basis of these allegations, the Plaintiffs have failed to state a claim that the Hospital is liable for false arrest, false imprisonment, assault or battery.  In response to the motion to dismiss, the Plaintiffs assert for the first time that Hospital employees physically restrained Brown before he was transferred to police custody.  Although, "[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss," the Court will permit the Plaintiffs leave to amend their complaint to allege that specific Hospital employees physically restrained Brown without cause to do so and detained him until the Police arrived in support of their false arrest, false imprisonment, battery and assault tort claims against the Hospital and that the Hospital is vicariously liable for the torts of its employees.  *K.D. ex rel. Duncan*, 2013 WL 440556, at *14 n. 8.  If the Hospital's employees did physically restrain Brown and held him until the Police arrived, then the Plaintiffs may be able to cure the pleading deficiencies in their false arrest, false imprisonment, assault and battery claims against the Hospital by providing specific factual details regarding the physical restraints the employees from the Hospital employed.   As the Plaintiffs may been aware of the assertion of these fatal pleading defects since May of 2012, leave is granted to file an amended complaint to allege facts sufficient to meet the pleading standard for false arrest, false imprisonment, battery and assault within twenty-one (21) days of the date of this decision.

## II. Negligence and Wrongful Death Claims against the Hospital

The Hospital argues that Plaintiffs' negligence and wrongful death claims must be dismissed for failure to abide by Gen. Stat. §52-190a(a) which provides:

> No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion.

Conn. Gen. Stat. §52-190a(a).  "The failure to obtain and file the written opinion required by [Section 52-190a(a)], of this section shall be grounds for the dismissal of the action." Conn. Gen. Stat. § 52- 190a(c).  As the Hospital argues, the Plaintiffs' claims against the Hospital must be dismissed because they have failed to obtain and provide a certificate of reasonable inquiry and good faith or opinion from a health care provider as required by Conn. Gen. Stat. §52-190a(a). *Bennett v. New Milford Hop., Inc.*, 300 Conn. 1, 29 (2011) (holding that "dismissal is the mandatory remedy when a plaintiff fails to file an opinion letter that complies with §52-190(a).").

In response, the Plaintiffs argue that they are not alleging negligence by the Hospital involved in medical treatment but "rather negligence sounded in the traditional and ordinary forms of wrongdoing" which would not be subject to Conn. Gen. Stat. §52-190a(a).  [Dkt. #17, Pl. Mem., p.6].   However, the Plaintiffs' allegations in their amended complaint belie their contention that they are alleging negligence and wrongful death claims outside the scope of Conn. Gen. Stat. §52-190a(a).  The Plaintiffs allege that both the Hospital and the City were "were negligent with respect to their improper use of excessive force; negligent infliction of emotional distress; denial, delay and obstruction of medical care and treatment; negligent hiring, training, supervision, monitoring and retention of agents, servants and employees; failed to have and/or properly use an early warning screening system for psychological profiles and failed to detect and/or respond in an appropriate manner to signs and symptoms presented by police officers involved herein; breach of special duty, failed to properly supervise, safeguard, and monitor Plaintiff."  [Dkt.#6, Pl. Am. Compl.,¶30].  Despite Plaintiffs' contention to the contrary, these allegations demonstrate that their negligence and wrongful death claims against the Hospital sounds squarely in medical negligence and fall within the scope of Conn. Gen. Stat. §52-190a(a)'s reach as they have brought a civil action to recover damages resulting from personal injury or wrongful death in tort in which they have alleged that the injury and death resulted from the negligence of a health care provider.  Accordingly, the Court dismisses the Plaintiffs' negligence and wrongful death claims against the Hospital for failure to comply with the requirements of Conn. Gen. Stat. §52-

190a(a).   However, the Plaintiff is granted leave to amend the complaint to allege

a negligence claim against the Hospital sounding in general negligence and not

medical malpractice within twenty-one (21) days of the date of this decision.

Even if the Plaintiffs' wrongful death claim is not premised on their

negligence claim, the Plaintiffs' allegations fail to state a claim for wrongful death

against the Hospital as the Plaintiffs have failed to plausibly allege that the

Hospital caused Brown's death.   The Connecticut Supreme Court has explained:

> The elements of a cause of action ... for a wrongful death are clear from the
> explicit language of the statute, which as a statute in derogation of the
> common law is limited to matters clearly within its scope.... The plaintiff
> must prove not only a violation of a standard of care as a wrongful act, but
> also a causal relationship between the injury and the resulting death.  A
> causal relation between the defendant's wrongful conduct and the
> plaintiff's injuries is a fundamental element without which a plaintiff has no
> case.... If the chain of causation of the damage, when traced from the
> beginning to the end, includes an act or omission which, even if wrongful
> or negligent, is or becomes of no consequence in the results or so trivial as
> to be a mere incident of the operating cause, it is not such a factor as will
> impose liability for those results.

*Grody v. Tulin,* 170 Conn. 443, 448-49 (1976) (internal quotation marks and

citations omitted).  The Plaintiffs have alleged that the Defendant Police Officers

took custody of Brown and placed him into a police vehicle.  They then allege that

Brown was shocked by an electrical weapon by the Defendant Police Officers

while in the police car and that Brown died as a result of the electric shock

administered by the Police Officers.  [Dkt. #6, Pls.' Am. Compl., ¶¶15-16].  As the

Hospital argues, the Plaintiffs have failed to allege any causal relationship

between the Hospital's conduct and Brown's death to maintain a wrongful death

claim against the Hospital.   To the extent that Plaintiff's claim is premised on the

contention that the Police would not have taken custody and shocked Brown if

the Hospital had not called the Police, such an act would be so tenuous and trivial as to be a mere incident of the operating cause which was the Police Officer's conduct in shocking Brown with an electrical weapon.  Consequently, the Hospital's act in calling the Police and restraining Brown until the Police arrived is of no consequence and cannot impose liability for wrongful death under Connecticut law.   In sum, the Court dismisses the Plaintiffs' negligence claim with leave to re-plead and wrongful death claim without leave to re-plead against the Hospital.

      iv.    Claims against the Waterbury Police Department

The City moves to dismiss the Waterbury Police Department as a Defendant in this action as police departments are not legal entities with the legal capacity to sue or be sued.  "It is elemental that in order to confer jurisdiction on the court [a party] must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to sue [or be sued]." *Isaac,* 3 Conn. App. 598 at 600.  Courts in Connecticut have held that the "Connecticut General Statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued ... Rather, pursuant to Connecticut enabling legislation, it is the municipality itself which possesses the capacity to sue and be sued." *Arteaga v. Town of Waterford*, No.HHDX07CV5013377S, 2010 WL 1611377, at *9 (Conn. Super. Ct. Mar. 16, 2010) (internal quotation marks and citations omitted); *Eloi v. Gagnon*, No.CV074030795,  2007 WL 4686489, at *2 (Conn. Super. Ct. Dec. 3, 2007) ("Accordingly, those Connecticut courts addressing this issue have held that

municipal police departments do not constitute an independent legal entity amenable to suit.") (collecting cases).  Further, it is well established that a municipal police department is neither a municipality nor a 'person' within the meaning of 42 U.S.C. § 1983.  *See Nicholson v. Lenczewski,* 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases).   Accordingly, the Court dismisses the Waterbury Police Department as a Defendant in this action.

      v.     Punitive Damages

Both the City and the Hospital have moved to dismiss the Plaintiffs' Count 7 claim for punitive damages on the basis that there is no authority that punitive damages are a separate and independent cause of action.  A claim for punitive damages "is not a separate count inasmuch as it is a remedy."  *Supreme Indus., Inc. v. Town of Bloomfield*, No.X03CV0340022269, 2007 WL 901805, at *26 (Conn. Super. Ct. Mar. 8, 2007).   "In Connecticut, punitive damages may be based either on statute or, in the absence of a statutory provision, common law.  'Punitive damages are a remedy awarded only when the evidence shows reckless, intentional or wanton violation of the rights of others.'"  *Id.* (quoting *Suffield Dev. Assocs. Ltd. Partnership v. National Loan Investors, L.P.,* 97 Conn. App. 541, 577, cert. denied, 280 Conn. 942, 943 (2006)).  The Court therefore dismisses the Plaintiffs' count 7 claim for "punitive damages" as a separate cause of action but notes that the Plaintiffs have sought the remedy of punitive damages in connection with their other claims.

## Conclusion

Based upon the above reasoning, the Hospital's [Dkt.#14] motion to dismiss is GRANTED IN PART AND DENIED IN PART and the City' [Dkt. #16] motion to dismiss is GRANTED.   The Plaintiffs' Section 1983 and wrongful death claims against the Hospital are dismissed.  The Plaintiff is given leave to re-plead within twenty-one (21) days of this Order their false arrest, false imprisonment, assault, battery and negligence claims against the Hospital.  Isler is dismissed as a Plaintiff in this action and the Waterbury Police Department is dismissed as a Defendant in this case.   Lastly, the Court dismisses the Plaintiffs' claim for punitive damages as a separate cause of action.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 21, 2013